## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. STRATFORD HOLDING, LLC      ) | |
| ) | |
| Plaintiff,      ) | |
| ) | |
| v.      ) | Case No.   CIV-12-772-HE |
| ) | |
| 1. FOOT LOCKER RETAIL INC.,      ) | |
| 2. FOG CAP RETAIL INVESTORS, LLC,      ) | |
| 3. KYSER KONCEPTS, LTD,      ) | |
| 4. ARTHUR B. KYSER,      ) | |
| 5. TIMOTHY W. KYSER, and      ) | |
| 6. DEBORAH MANNECK,      ) | |
| ) | |
| Defendants.      ) | |

## COMPLAINT

Plaintiff, Stratford Holding, LLC ("Stratford"), files this Complaint against Foot Locker Retail, Inc. ("Foot Locker") and Fog Cap Retail Investors LLC ("Fog Cap"). Plaintiff also files this Complaint against Kyser Koncepts, LTD, Arthur B. Kyser, Timothy W. Kyser, and Deborah Manneck (collectively the "Kyser Defendants"). Stratford alleges as follows:

## PARTIES

1.     Plaintiff Stratford is a New York Corporation with its principal place of business at 119 West 57th Street, #906, New York, New York, 10019.

2.     Defendant Foot Locker is a New York corporation with its principal place of business at 112 W 34th Street, New York, New York, 10120. Foot Locker may be served by serving its registered agent, The Corporation Company, 1833 S. Morgan Road, Oklahoma City, Oklahoma, 73128-7004.

3.      On information and belief, defendant Fog Cap is an Oregon limited liability company with its principal place of business at 1410 SW Jefferson Street, Portland, Oregon, 97201.  Fog Cap may be served by serving its registered agent, Corporation Service Company, 285 Liberty Street NE, Salem, Oregon, 97301.

4.      On information and belief, defendants Kyser Koncepts, LTD, Arthur B. Kyser, Timothy W. Kyser, and Deborah Manneck are residents of the State of Texas and may be served at Post Office Box 890, Montgomery, Texas, 77355-0890 and/or through the Registered Agent Dale A. Dossey, 25025 I-45 N, Suite 210, The Woodlands, Texas, 77380.

5.      Stratford is the successor in interest to 63 Associates, Inc. as it pertains to the February 25, 1977 Lease Agreement between 63 Associates, Inc. and Kinney Shoe Corporation (the "Lease", a true and correct copy of which is attached as Exhibit 1).  As such, Stratford is the Lessor under the Lease.

6.      Foot Locker was formerly known as Venator Group Retail, Inc. which, in turn, was formerly known as Kinney Shoe Corporation, the original Lessee under the Lease.

7.      Upon information and belief, Foot Locker subleased the Property to one or more of the Kyser Defendants in or around 1995.

8.      Foot Locker assigned the Lease to Fog Cap on or about October 9, 2002. A true and correct copy of the Assignment and Assumption Agreement and Bill of Sale is attached as Exhibit 2.  As such, Fog Cap is currently the Lessee under the Lease. Pursuant to the express terms of the Lease, however, said assignment did not relieve Foot Locker of its obligations as Lessee thereunder.

2

9.     Upon information and belief, one or more of the Kyser Defendants continued to sublease the Property after Foot Locker assigned the Lease to Fog Cap in 2002.

## JURISDICTION AND VENUE

10.    Strafford's claims herein include, but are not limited to, claims pursuant to the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 9601, et seq. under its citizen suit provision, 42 U.S.C § 6972.

11.    On March 30, 2102, Stratford provided Notice of Intent to Sue (the "Notice", attached hereto as Exhibit 3) Defendants in Federal District Court, pursuant to RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B) for violations of RCRA.  The Notice stated that the violations alleged herein have caused to exist contamination at the Property requiring immediate action which is the basis for Stratford's citizen suit action against Defendants pursuant to RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B).

12.    Pursuant to RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), and in compliance with 40 C.F.R. Part 254, the Notice provided notice that Stratford would file a RCRA citizen suit against the Owners/Operators, pursuant to RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), in Federal District Court ninety (90) days after serving the Notice if the Defendants had not undertaken immediate steps to remediate the Property with ODEQ oversight and in coordination with Stratford.

13.    This Court has subject matter jurisdiction over this lawsuit, pursuant to 42 U.S.C. § 6972(a) for claims arising under RCRA, and pursuant to 28 U.S.C. § 1367 for the pendent state law claims.

14.    Venue is proper in this District pursuant to 42 U.S.C. §6972 (a).

## BACKGROUND

### *Defendants Operations and Contamination*

15.    This matter concerns property located at 7307 N. MacArthur Boulevard, Oklahoma City, Oklahoma (the "Property"), which was originally leased to Foot Locker's predecessors in or about 1977.

16.    Upon information and belief, in or around 1995, Foot Locker first subleased the Property to one or more of the Kyser Defendants.

17.    Prior to the sublease to the Kyser Defendants, no dry cleaning operations had been conducted on or near the Property.

18.     Upon information and belief, the Kyser Defendants installed dry cleaning equipment and subsequently engaged in the commercial dry cleaning business at the Property.  Some or all of the Kyser Defendants have done business at the Property as "$1.25 Cleaners."

19.    The dry cleaning process employed by the Kyser Defendants used, among other things, a hazardous chlorinated solvent known as tetrachloroethene a/k/a tetrachloroethylene ("PCE"), instead of water and detergent, to clean certain fabrics.

20.    Upon information and belief, as part of the Kyser Defendants' dry cleaning operations, PCE was used in specially designed machines in which it was sprayed onto fabrics in rotating baskets.  As PCE passed through the fabrics, it removed and entrained dirt and grime.  PCE contaminated with dirt and grime was then reclaimed by passing it through a filter or other process which removed the contaminants from the solvent.  Reclaimed PCE was re-circulated and repeatedly re-used in the dry cleaning process.  Solvent-containing fabrics removed from the cleaning baskets were heated to

4

vaporize any remaining solvents, and such solvents were then condensed over cooling coils.  As part of the process, any moisture accumulating in the PCE during these processes would be separated from the solvent, collected and disposed.  Waste filters and/or sludge were also necessarily generated by the processes and disposed.

21.	PCE is known to easily migrate through concrete floors.

22.	Upon information and belief, while carrying out dry cleaning operations on the Property, the Kyser Defendants caused or allowed PCE, water contaminated with PCE, and/or sludge containing PCE to be leaked, spilled, discharged, emitted, dumped, discarded, disposed, condensed or otherwise released onto and through the floor of the Property, into and out of the sanitary sewer, and/or into the area surrounding the Property, and to otherwise migrate into the environment at and around the Property, including soil and groundwater.

23.	Attached hereto as Exhibit 4 is a report from Terracon Consultants, Inc. ("Terracon"), which shows that PCE has been allowed to seep into the soil and water underlying the Property, above reportable thresholds requiring immediate action.

24.	On behalf of Plaintiff, Terracon collected soil and groundwater data at the Property on January 23, 2012.  Terracon's data demonstrates the presence of PCE at concentrations as high as 5,830 milligrams per kilogram (mg/kg) in the soil, and 7,030 micrograms per liter (ug/L) in the groundwater underlying the Property.

25.	Terracon's data demonstrates that the Defendants have damaged the Property by allowing PCE to seep into the building structure on the Property, as well as the soil and groundwater underlying the Property.  These high concentrations far exceed the Environmental Protection Agency ("EPA") Region 6 Regional Screening Level

5

Summary Table dated November 2011 for PCE contamination for soil (0.55 mg/kg for residential, 2.6 mg/kg for industrial) and the EPA maximum contaminant level for groundwater (5 ug/L).

### *Federal Statutory and Regulatory Framework*

26.     In Section 1002(b)(2) of RCRA, Congress expressed that "the disposal of solid and hazardous waste in or on the land . . can present a danger to human health or the environment."

27.     In Section 1003(a)(4) or RCRA, Congress declares one of the purposes of RCRA is "assuring that hazardous waste management practices are conducted in a manner which protects human health and environment."  42 U.S.C. § 6902(4).

28.     In Section 1004(3), the term "disposal" is defined as "the discharge, deposit, injection, dumping, spilling, leaking or placing of any solid waste . . . into or on any land or water so that such solid waste or hazardous waste or any constituent thereto may enter the environment or be emitted into the air or discharged into any waters, including groundwater." 42 U.S.C. § 6903(3).

29.     In Section 1004(27), the term "solid waste" means any garbage, refuse . . . and any other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations. . . ."  42 U.S.C. § 6903(27).

30.     In Section 3001, RCRA provides EPA with the authority to identify solid wastes which are hazardous wastes.  42 U.S.C. § 6921.

31.    Pursuant to Section 3001, EPA adopted regulations defining which solid wastes are hazardous wastes by listing and characteristic.  40 C.F.R. Parts 260 through 261.

32.    In Section 3004, RCRA provides EPA with the authority to adopt standards applicable to owners and operators of hazardous waste treatment, storage, and disposal facilities, including prohibitions on land disposal of specified wastes.  42 U.S.C. § 6924.

33.    Pursuant to Section 3004, EPA adopted regulations implementing the standards applicable to owners and operators of hazardous waste treatment, storage, and disposal facilities, including prohibitions on land disposal of specified wastes.  40 C.F.R. Parts 262, 263, 264, 265, 268, 270, 272 (as relevant).

34.    RCRA's citizen suit provisions, sections 7002(a)(1)(A) and (B), entitle Plaintiff to seek relief against Defendants in Federal District Court. 42 U.S.C. § 6972(a)(1)(A) & (B).   Under section 7002(a)(1)(A) and (B), "any person may commence a civil action on his own behalf" against a person who is "in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter," 42 U.S.C. § 6972(a)(1)(A); or "any person…who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment," 42 U.S.C. § 6972(a)(1)(B).

35.    The requirements for giving prior notice of a citizen suit under RCRA are set forth in 40 C.F.R. Part 254 and have been followed by Plaintiff in this action.

7

*State Statutory and Regulatory Framework*

36.     In response to the problem of improper hazardous waste disposal, the Oklahoma Legislature enacted the Oklahoma Hazardous Waste Management Act, Okla. Stat. tit. 27A, § 2-7-101 *et seq ("OHWMA").*

37.     Among other things, the OHWMA provides that the State of Oklahoma "may prohibit certain specific disposal practices including, but not limited to, any type of land disposal of any form of waste."  Okla. Stat. tit. 27A, § 2-7-105(10).  The OHWMA further provides that "no person shall store, treat or dispose of hazardous waste materials . . . who does not possess a valid and appropriate hazardous waste facility permit." Okla. Stat. tit. 27A,§ 2-7-108(A).

38.     The OHWMA is administered by the Oklahoma Department of Environmental Quality ("ODEQ").  Okla. Stat. tit. 27A, § 2-7-104 and the Oklahoma Environmental Quality Code, Okla. Stat. tit. 27A, § 2-1-101, *et seq.*

39.     In addition to its authority granted by the Oklahoma Legislature under the OHWMA, in 1985, the EPA granted Oklahoma final authorization to implement and enforce RCRA requirements in Oklahoma.  40 C.F.R. Part 272, Subpart LL.

40.     ODEQ has promulgated the Hazardous Waste Management ("HWM") Rules to implement the OHWMA and RCRA requirements.  OAC 252:205-1-1 *et seq.* The HWM Rules prescribe the practices a hazardous waste generator, storer and disposer in Oklahoma must employ upon generating the hazardous waste to properly manage, treat and dispose of that hazardous wastes.

41.     ODEQ has, with certain minor exceptions not relevant to this matter, adopted and incorporated by reference the federal regulations at 40 C.F.R. Parts 260 –

273 pertaining to hazardous waste management, treatment and disposal. OAC 252:205-3-1 *et seq*.

42.     State law hazardous waste handling, storage and disposal requirements are enforceable by citizens under RCRA.  44 Fed. Reg. 53438 (Sept. 13, 1979).

### *Defendants' RCRA/OHWMA Violations*

43.     Foot Locker, Fog Cap, and the Kyser Defendants, are all "owners" and/or "site managers" of the dry cleaning operations conducted at the Property, pursuant to 40 C.F.R. § 254.2(a)(1), and are referred to collectively hereinafter for purposes of this RCRA Citizen Suit, as "Owners/Operators" of the dry cleaning facility the Lessees owned and operated at the Property.

44.     As noted above, Terracon's data (Exhibit 4) demonstrates the presence of PCE at concentrations as high as 5,830 milligrams per kilogram (mg/kg) in the soil, and 7,030 micrograms per liter (ug/L) in the groundwater underlying the Property.  Fog Cap was present on the Property through Pat E. Lee, Strategic Environmental Management, LLC, Greenwood Village, Colorado, when Terracon collected these samples on January 23, 2012.  On behalf of Lessee Fog Cap, Strategic Environmental Management, LLC generated its own data by collecting split samples with Terracon at that time.

45.     Terracon's data demonstrates that the Owners/Operators have damaged the Property by allowing PCE to seep into the building structure on the Property, as well as the soil and groundwater underlying the Property.   These high concentrations constitute an "imminent and substantial endangerment" to human health and the environment.

9

46.     Defendants are in violation of a Permit, Standard, Regulation, Condition, Requirement, or Order, specifically disposal of Hazardous Waste without a RCRA Permit or Interim Status, pursuant to OAC 252:205-3-2(k) (Section 3005(a) and (e) of RCRA and 40 C.F.R. § 270.1(b), 40 C.F.R. § 272.1851(c)(1)(i)).

47.     The concentrations of PCE in the soil and groundwater underlying the Property constitute Owners/Operators disposal of PCE on the Property pursuant to OAC 252:205-3-2(c) (40 CFR 261.2) (PCE placed on the land is "solid waste"). Pursuant to OAC 252:205-3-2(d) (40 CFR 262.31), PCE waste is a listed "hazardous waste," i.e., F001 or F002. "Disposal" is defined by OAC 252:205-3-2(b)(40 CFR 260.10) as "the discharge, deposit, injection, dumping, spilling, leaking or placing of any solid waste or hazardous waste (whether containerized or uncontainerized) into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including groundwater."

48.     The concentrations of PCE in the soil at the Property exceed 6.0 mg/kg in violation of the Land Disposal Restrictions Standards. Pursuant to OAC 252:205-3-2(j) (40 CFR 268.48), F001 and F002 hazardous waste is prohibited from land disposal unless the generator deactivates the waste to remove the PCE to a concentration of 6.0 mg/kg. Therefore, the Owners/Operators are in violation of OAC 252:205-3-2(j) (40 CFR 268.40 and 268.48) by disposing of hazardous waste on the Property without meeting the applicable land disposal restriction standards.

49.     Pursuant to OAC 252:205-3-2(d) (40 C.F.R. § 262.11), a person who generates a solid waste must determine if that waste is hazardous. Pursuant to OAC

10

252:205-3-2(c) (40 C.F.R. § 261.2), the PCE placed on the ground is solid waste because it was disposed of on the ground. The Owners/Operators failed to determine whether the waste was hazardous waste before disposing of the waste on the Property. Therefore, the Owners/Operators are in violation of OAC 252:205-3-2(d) (40 C.F.R. § 262.11) by failing to make a hazardous waste determination for the wastes disposed of on the Property that remain on the Property.

50.    Pursuant to OAC 252:205-13-1, upon release of materials that are or become hazardous waste whether by spillage, leakage, or discharge to soils or to air or to surface or ground waters (outside the limits of a discharge permit), or by other means, and which could threaten human health or the environment, the owner or operator shall immediately notify the DEQ and take all necessary action to contain, remediate, and mitigate hazards from the release. Spilled or leaked materials and soils and other matter that may be contaminated with such materials shall be tested by the responsible person to determine whether they are hazardous waste, nonhazardous industrial waste or solid waste. Waste materials resulting from a release shall be properly disposed of in accordance with the applicable rules. The DEQ may require submission of a remediation plan that meets the closure requirements of 40 C.F.R. §§ 265.111 and 265.114. The Executive Director may assess costs relating to expenses and damages incurred by the DEQ in responding to a release and overseeing its remediation. Costs shall be borne by the responsible person(s). As owners and site managers of the dry cleaning facility, which they operated upon the Property in a manner that resulted in releases of PCE to the soils, air and groundwaters which could, if unaddressed, threaten

11

human health or the environment, and failing to immediately notify the DEQ and take necessary action, the Owners/Operators are in violation of OAC 252:205-13-1.

51.    The violations listed above are all committed by Owners/Operators in their dry cleaning operations utilizing PCE, which resulted in careless or intentional spilling or dumping of PCE in and around the Property, and in their continuing failure to respond to the releases as required of Owners/Operators, pursuant to RCRA as implemented by the State of Oklahoma.

52.    These violations occurred during the operation of the Property by the Owners/ Operators as a dry cleaning facility, which Lessees have stated began in 1995, but certainly no later than 2000 and continuing past the official term of the Lease with Lessor, which was supposed to end on February 24, 2012, and then continuing each and every day the PCE contamination remains in, on and under the Property presenting an existing imminent and substantial endangerment to human health and the environment.

53.    Defendants have failed to undertake immediate steps to remediate the Property with ODEQ oversight and in coordination with Stratford.

54.    Defendants have refused to accept responsibility for the contamination and have made no substantial efforts to investigate and remediate the PCE contamination.

### *Relevant Lease Provisions*

55.    The Lease provides, among other relevant terms, that "Lessor shall not incur or become liable for any costs, expenses or obligations of any kind and nature whatsoever relating to the Demised Premises during the term of this Lease." Exhibit 1, ¶ 1.2.

12

56.     The Lease further provides, "Lessee shall also pay, as additional rental, all charges, costs, expenses and other payments, which Lessee assumes or agrees to pay under any of the provisions of this Lease, and, in the event of any non-payment thereof, Lessor shall have all the rights and remedies it would have hereunder or by law in the case of non-payment of rent." Exhibit 1, ¶ 1.4.

57.     The Lease further provides, "Lessee shall, at its sole cost and expense, maintain the Demised Premises and make repairs thereto and replacements thereof…so that the Demised Premises shall continue in the same repair and operating condition as at the beginning of the term of this Lease, ordinary wear and tear and obsolescence excepted." Exhibit 1, ¶ 4.1.

58.     The Lease further provides, "Lessee shall, during the term of this Lease, at its sole cost and expense, comply with all valid laws, ordinances, regulations, orders and requirements of any governmental authority, which may be applicable to the Demised Premises now or in the future or to the use, manner of use, or occupancy thereof, whether or not the same shall necessitate structural repairs or alterations or interfere with the use or occupancy of the Demised Premises." Exhibit 1, ¶ 8.1.

59.     The Lease further provides that, in subletting the Demised Premises, "the Lessee … shall remain liable for the payment of rent hereunder, and for the performance of all of the agreements, conditions, covenants and terms herein contained…" Exhibit 1, ¶ 11.2.

60.     The Lease authorizes an assignment of the Lease but states "the assignee shall, in writing, assume and agree to keep, observe and perform all of the agreements, conditions, covenants and terms of this Lease on the part of the Lessee to be kept,

observed and performed, and shall be, and become, jointly and severally liable with the Lessee for the non-performance thereof." Exhibit 1, ¶ 11.3(b).

61.     The Lease further provides that, "Lessee will indemnify and hold Lessor harmless from and against any and all liabilities, obligations, damages, penalties, claims, costs, charges and expenses, including reasonable attorneys' fees, which may be imposed upon or incurred by Lessor by reason of any of the following occurring during the term of this Lease:

>           (i)     Any work or thing done in, on or about the Demised Premises or any part thereof;
>
>           (ii)    Any use, non-use, possession, occupation, condition, operation, maintenance or management of the Demised Premises or any part thereof;
>
>           (iii)   Any negligence of Lessee…;
>
>           (iv)    Any … damage to any … property…; and
>
>           (v)     Any failure on the part of the Lessee to perform or comply with any of the agreements, terms or conditions contained in this Lease…"

Exhibit 1, ¶12.1.

62.     As indicated by Exhibit 4, Foot Locker and/or Fog Cap and/or their assignees have damaged the Demised Premises by allowing PCE to seep into the soil and water underlying the Property above reportable thresholds requiring immediate action.

63.     Foot Locker and/or Fog Cap and/or their assignees have also damaged the Property by failing to properly maintain and repair the Property.

64.    On February 22, 2012, Stratford, via its attorneys, sent a demand letter to Foot Locker and Fog Cap demanding that Foot Locker and Fog Cap clean up the Demised Premises as required by law and the terms of the Lease. A true and correct copy of the Demand Letter is attached as Exhibit 5.

## COUNT I

### DISPOSAL OF HAZARDOUS WASTE
### WITHOUT A RCRA PERMIT OR INTERIM STATUS

65.    Plaintiff incorporates by reference all of the prior paragraphs, as if fully set forth herein.

66.    Disposal of Hazardous Waste requires either a RCRA Permit or Interim Status, pursuant to OAC 252:205-3-2(k) (Section 3005(a) and (e) of RCRA and 40 C.F.R. § 270.1(b), 40 C.F.R. § 272.1851(c)(1)(i)).

67.    The concentrations of PCE in the soil and groundwater underlying the Property constitute Owners/Operators' disposal of PCE on the Property without a RCRA Permit or Interim Status. Pursuant to OAC 252:205-3-2(c) (40 CFR 261.2), PCE placed on the land is "solid waste." Pursuant to OAC 252:205-3-2(d) (40 CFR 262.31), PCE waste is a listed "hazardous waste," i.e., F001 or F002. "Disposal" is defined by OAC 252:205-3-2(b)(40 CFR 260.10) as "the discharge, deposit, injection, dumping, spilling, leaking or placing of any solid waste or hazardous waste (whether containerized or uncontainerized) into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including groundwater."

68.     As set forth above, Defendants have disposed of hazardous waste without a RCRA permit or interim status and that disposal continues to this day as the PCE continues to be discharged into the groundwater from the contaminated soils.

69.     Defendants' disposal of hazardous waste without a RCRA permit or interim status constitutes one or more ongoing violations of a "standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant," 42 U.S.C. § 6972(a)(1)(A).

70.     These violations have "contributed or [are] contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment,"  42 U.S.C. § 6972(a)(1)(B).

71.     The applicable notice required for bringing this action under 42 U.S.C. § 6972 has been given.

## COUNT II

### FAILURE TO MEET LAND DISPOSAL RESTRICTIONS STANDARDS

72.     Plaintiff incorporates by reference all of the prior paragraphs, as if fully set forth herein.

73.     In disposing of Hazardous Waste, RCRA Hazardous Waste Generators, Treaters and Disposers must meet Land Disposal Restrictions Standards, pursuant to OAC 252:205-3-2(j) (40 C.F.R. §§ 268.40, 268.48 and 40 C.F.R. § 272.1851(c)(1)(i)).

74.     The concentrations of PCE in the soil at the Property currently exceed 6.0 mg/kg in violation of the Land Disposal Restrictions Standards.  Pursuant to OAC 252:205-3-2(j) (40 CFR 268.48), F001 and F002 hazardous waste is prohibited from

land disposal unless the generator deactivates the waste to remove the tetrachloroethylene to a concentration of 6.0 mg/kg. Therefore, the Owners/Operators are in violation of OAC 252:205-3-2(j) (40 CFR 268.40 and 268.48) by disposing of hazardous waste on the Property without meeting the applicable land disposal restriction standards.

75.    Defendants' disposal of hazardous waste without complying with Land Disposal Restrictions Standards constitutes one or more ongoing violations of a "standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant," 42 U.S.C. § 6972(a)(1)(A).

76.    These violations have "contributed or [are] contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment,"  42 U.S.C. § 6972(a)(1)(B).

77.    The applicable notice required for bringing this action under 42 U.S.C. § 6972 has been given.

## COUNT III

### FAILURE TO MAKE A HAZARDOUS WASTE DETERMINATION PURSUANT TO RCRA GENERATOR REQUIREMENTS

78.    Plaintiff incorporates by reference all of the prior paragraphs, as if fully set forth herein.

79.    In managing Hazardous Waste, RCRA Generators must properly complete a Hazardous Waste Determination pursuant to OAC 252:205-3-2(d) (40 C.F.R. § 262.11 and 40 C.F.R. § 272.1851(c) (1) (i)).

17

80.     Pursuant to OAC 252:205-3-2(d) (40 C.F.R. § 262.11), a person who generates a solid waste must determine if that waste is hazardous.  Pursuant to OAC 252:205-3-2(c) (40 C.F.R. § 261.2), the PCE placed on the ground is solid waste because it was disposed of on the ground.  The Owners/Operators failed to determine whether the waste was hazardous waste before disposing of the waste on the Property.  Therefore, the Owners/Operators are in violation of OAC 252:205-3-2(d) (40 C.F.R. § 262.11) by failing to make a hazardous waste determination for the wastes disposed of on the Property.

81.     Defendants' continuing failure to complete a hazardous waste determination before disposing of the waste on the Property constitutes one or more ongoing violations of a "standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant," 42 U.S.C. § 6972(a)(1)(A).

82.     These violations have "contributed or [are] contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment,"  42 U.S.C. § 6972(a)(1)(B).

83.     The applicable notice required for bringing this action under 42 U.S.C. § 6972 has been given.

## COUNT IV

### FAILURE TO NOTIFY DEQ OF AND MITIGATE A RELEASE OF HAZARDOUS WASTE

84.     Plaintiff incorporates by reference all of the prior paragraphs, as if fully set forth herein.

85.    Pursuant to OAC 252:205-13-1, upon release of materials that are or become hazardous waste whether by spillage, leakage, or discharge to soils or to air or to surface or ground waters (outside the limits of a discharge permit), or by other means, and which could threaten human health or the environment, the owner or operator shall immediately notify the DEQ and take all necessary action to contain, remediate, and mitigate hazards from the release.  Spilled or leaked materials and soils and other matter that may be contaminated with such materials shall be tested by the responsible person to determine whether they are hazardous waste, nonhazardous industrial waste or solid waste.    Waste materials resulting from a release shall be properly disposed of in accordance with the applicable rules.    The DEQ may require submission of a remediation plan that meets the closure requirements of 40 C.F.R. §§ 265.111 and 265.114.  The Executive Director may assess costs relating to expenses and damages incurred by the DEQ in responding to a release and overseeing its remediation. Costs shall be borne by the responsible person(s).

86.    As owners and site managers of the dry cleaning facility, which they operated upon the Property in a manner that resulted in releases of tetrachloroethylene to the soils, air and ground waters, which could, if unaddressed, threaten human health or the environment, and failing to immediately notify the DEQ and take necessary action, the Owners/Operators have violated, and continue to violate, OAC 252:205-13-1.

87.    Defendants' continuing failure to immediately address the release(s) of hazardous waste from the dry cleaning facility constitutes one or more ongoing violations of a "standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant," 42 U.S.C. § 6972(a)(1)(A).

19

88.   These violations have "contributed or [are] contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment,"  42 U.S.C. § 6972(a)(1)(B).

89.   The applicable notice required for bringing this action under 42 U.S.C. § 6972 has been given.

## COUNT V

### DEFENDANTS' UNLAWFUL WASTE DISPOSAL PRACTICES POSE AN IMMINENT AND SUBSTANTIAL ENGANGERMENT TO HUMAN HEALTH AND THE ENVIRONMENT

90.   Plaintiff incorporates by reference all of the prior paragraphs, as if fully set forth herein.

91.    As has been set forth in Counts I, II, III and IV above, Defendants have disposed of hazardous wastes in violation of the provisions of RCRA, the OHWMA, and the regulations promulgated thereunder.

92.   Defendants' unlawful activities have released toxic pollutants and hazardous constituents into the environment, including, but not limited to, soil and groundwater in concentrations that far exceed actionable thresholds.

93.   Defendants have "contributed or [are] contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment,"  42 U.S.C. § 6972(a)(1)(B).

94.   RCRA permits citizen suits under 42 U.S.C. § 6972.  RCRA's citizen suit provisions, sections 7002(a)(1)(A) and (B), entitle Plaintiff to seek relief against

20

Defendants in Federal District Court. 42 U.S.C. § 6972(a)(1)(A) & (B).  Under section 7002(a)(1)(A) and (B), "any person may commence a civil action on his own behalf" against a person who is "in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter," 42 U.S.C. § 6972(a)(1)(A); or "any person…who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment,"  42 U.S.C. § 6972(a)(1)(B).

95.     The applicable notice required for bringing this action under 42 U.S.C. § 6972 has been given.

96.     Plaintiff has suffered actual harm from Defendants' violation of RCRA.

WHEREFORE, Stratford respectfully demands and prays for judgment against Defendants for the following:

A. A declaration that:

   i. Defendants failed to make the required hazardous waste determination under RCRA and the OHWMA.

   ii. Defendants unlawfully disposed of hazardous waste on the Property in violation of the prohibition on disposal of hazardous waste without a RCRA permit or Interim Status.

   iii. Defendants' unlawful disposal of hazardous waste on the Property was in violation of applicable land disposal restriction standards.

   iv. Defendants failed to notify EPA and DEQ of the release of hazardous waste and to mitigate such release.

21

v. Defendants' unlawful disposal of hazardous waste and failure to mitigate has resulted in an imminent and substantial endangerment to human health and the environment in violation of Section 7002 of RCRA.

B. An order directing Defendants to comply with all applicable provisions of RCRA and the OHWMA and to take all reasonable and necessary action to protect human health and the environment from contaminants associated with the Defendants' activities at the Property, including, but not limited to, undertaking an immediate removal action of the PCE source areas, followed by a comprehensive investigation and remediation of the Property, surrounding areas and underlying groundwater affected by Defendants' unlawful disposal of hazardous waste.

C. An award to Plaintiff of its costs and disbursements of this action, including reasonable fees for attorneys and experts, as well as providing such other, further, and different relief as may be just and proper under RCRA, 42 U.S.C. § 6972(e), and reasonable attorneys' fees and court costs, pursuant to Okla. Stat. tit. 12 § 940, together with interest thereon, and any other recovery pursuant to applicable laws of the State of Oklahoma.

## COUNT VI

## DECLARATORY JUDGMENT REGARDING LEASE OBLIGATIONS

97.    The allegations of prior paragraphs are hereby incorporated by reference, restated, realleged, and made a part hereof as if each such allegation were fully set forth herein.

98.    Under the terms of the Lease, Fog Cap and Foot Locker are jointly and severally obligated to maintain the Property "in the same repair and operating condition as at the beginning of the term of this Lease."

99.    The PCE contamination and other damage caused by Foot Locker, Fog Cap and their subtenants have materially and adversely impacted the value of the Property.

100.   Fog Cap and Foot Locker have failed to maintain the Property "in the same repair and operating condition as at the beginning of the term of this Lease" due to, among other things, the contamination caused by the dry cleaning operations on the Property.

101.   Fog Cap and Foot Locker have failed to investigate properly the contamination caused by dry cleaner operations at the Property, despite Plaintiff's reasonable requests.

102.   Fog Cap and Foot Locker are jointly and severally obligated to pay the costs of investigating the full extent of the contamination and other damage, and restoring the Property to its uncontaminated, pre-Lease condition.

103.   Stratford has incurred costs at the Property due to Fog Cap and Foot Locker's breaches of their obligations under the Lease.

104.    Under the terms of the Lease, Fog Cap and Foot Locker must indemnify and hold harmless Stratford for all costs, including attorneys' fees and with interest, that Stratford incurs with regard to the Property.

WHEREFORE, Stratford respectfully demands and prays for judgment against Fog Cap and Foot Locker as follows:

(i)      That judgment be entered in favor of Stratford and against Fog Cap and Foot Locker declaring Fog Cap and Foot Locker jointly and severally responsible for restoring the Property to its pre-leased condition; for returning the Property to full compliance with all laws and regulations; for investigating the presence of contamination at the Property; and for conducting such further work as may be required by the Oklahoma Department of Environmental Quality;

(ii)     That judgment be entered in favor of Stratford and against Fog Cap and Foot Locker, jointly and severally, for all costs of this action; and

(iii)    That Stratford be granted such other and further relief at law or in equity as may be justified by the evidence and the law and as this Court may deem just and proper.

## COUNT VII

## BREACH OF CONTRACT

105.    The allegations of prior paragraphs are hereby incorporated by reference, restated, realleged, and made a part hereof as if each such allegation were fully set forth herein.

106.   Fog Cap and Foot Locker have breached paragraph 4.1 of the Lease by failing to maintain the Property "in the same repair and operating condition as at the beginning of the term of this Lease."

107.   Fog Cap and Foot Locker have breached paragraph 1.2 of the Lease, as their failures to abide by the Lease terms caused Stratford to incur costs in relation to the Property.

108.   Fog Cap and Foot Locker have breached paragraph 12.1 of the Lease by failing to indemnify, defend and hold harmless Stratford for Stratford's costs in relation to the Property.

WHEREFORE, Stratford respectfully demands and prays for judgment against Fog Cap and Foot Locker as follows:

(i)    That judgment be entered in favor of Stratford and against Fog Cap and Foot Locker, jointly and severally, for all costs Stratford has incurred in investigating the Property in connection with the PCE contamination, together with interest;

(ii)   That judgment be entered in favor of Stratford and against Fog Cap and Foot Locker, jointly and severally, for all costs of this action; and

(iii)  That Stratford be granted such other and further relief at law or in equity as may be justified by the evidence and the law and as this Court may deem just and proper.

25

## COUNT VIII

## TRESPASS

109.   Plaintiff incorporates by reference all of the prior paragraphs, as if fully set forth herein.

110.   Defendants continuously or intermittently caused a trespass to the Plaintiff's Property by failing to contain and allowing the dispersal of hazardous waste on the Property.  Defendants' release of hazardous waste is the direct and proximate cause of injuries and damages to the Plaintiff's Property.

111.   Plaintiff is, therefore, entitled to damages in an amount in excess of $75,000, and to equitable relief in the form of removal of the pollution that occurred as a result of the Defendants' conduct alleged herein.

## COUNT IX

## PRIVATE NUISANCE

112.   Plaintiff incorporates by reference all of the prior paragraphs, as if fully set forth herein.

113.   Defendants' actions, in connection with the escape of pollutants onto the Property in excess of that allowed by law, subject Plaintiff to unreasonable inconvenience, interference, annoyance, and loss of use and value of its Property.  The nuisance has been continuing since the dry cleaning facility was in operation and continues today with the presence of hazardous waste present in the soil and groundwater resources.

114.   Plaintiff is, therefore, entitled to damages in an amount in excess of $75,000, and to equitable relief in the form of removal of the pollution that occurred as a result of the Defendants' conduct alleged herein.

## COUNT X

## PUBLIC NUISANCE

115.   Plaintiff incorporates by reference all of the prior paragraphs, as if fully set forth herein.

116.   Defendants' conduct in connection with the release of and failure to control pollutants on the Property constitutes a public nuisance in that it affects, at the same time an entire community, in violation of Oklahoma law codified at 50 Okla. Stat. § 2.

117.   As a result of such nuisance, Plaintiff has suffered, and will continue to suffer, injuries to its Property.

118.   Unless ordered to remove the pollution by this Court, the threat of continued damage to the Plaintiff's Property and/or health, persons, government, traditions, social, and cultural fabric by the Defendants will continue.

119.   The Plaintiff is therefore entitled to damages in an amount in excess of $75,000, and to equitable relief in the form of removal of the pollution that was a result of the Defendants' conduct alleged herein.

## COUNT XI

## NEGLIGENCE

120.   Plaintiff incorporates by reference all of the prior paragraphs, as if fully set forth herein.

121.   Fog Cap and Foot Locker breached the duty of due care they owed to Stratford by leasing the Demised Premises to a dry cleaning company and failing to conduct adequate environmental investigations into the dry cleaning company's operations.

122.   Fog Cap and Foot Locker further breached their duty of due care by allowing the dry cleaning subtenants to operate in a manner that contaminated the Property.

123.   The Kyser Defendants breached their duty of due care by allowing contaminants to seep into the Property.

124.   The breach of these duties by Defendants has caused damage to the Plaintiff's Property.

125.   Plaintiff is entitled to damages in an amount in excess of $75,000 as a result of Defendants' conduct alleged herein.

## COUNT XII

## INJURY TO REAL PROPERTY

126.   As a result of Defendants' unlawful disposal of hazardous waste on the Property, Plaintiff's Property has been injured, and Plaintiff seeks damages on account of such injury.

127.   Pursuant to Okla. Stat. tit. 12 § 940, Plaintiff is entitled to recover from Defendants the reasonable attorney's fees and court costs incurred by Defendants, together with interest thereon.

Jury Trial demanded on all issues so triable.

Respectfully submitted,

*s/Robert W. Dace*
Robert W. Dace, OBA #10263
Mary Ellen Ternes, OBA #19995
Michael Avery, OBA #22476
McAfee & Taft A Professional Corporation
10th Floor, Two Leadership Square
211 North Robison
Oklahoma City, OK 73102
Telephone:   (405) 235-9621
Facsimile:   (405) 235-0439
bob.dace@mcafeetaft.com
maryellen.ternes@mcafeetaft.com
michael.avery@mcafeetaft.com