**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| STRATFORD HOLDING, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | NO. CIV-12-0772-HE |
| ) | |
| FOOT LOCKER RETAIL INC., *et al.,* ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Plaintiff Stratford Holding, LLC filed this action against defendants Foot Locker Retail, Inc. ("Foot Locker"), Fog Cap Retail Investors, LLC ("Fog Cap"), Fog Cutter Capital Group Inc. ("Fog Cutter"), Kyser Koncepts, LTD, Arthur B. Kyser, Timothy W. Kyser and Deborah Manneck ("Kyser defendants"), Jeffrey P. Green and William E. Chunga, based on their involvement with certain real property located at 7307 N. McArthur Boulevard in Oklahoma City, Oklahoma (the "Property"). Plaintiff asserts federal claims under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901-6992k, and the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA), 42 U.S.C. §§ 9601-9675, and various state law claims. Defendants Foot Locker, Fog Cap, and Fog Cutter have filed motions to dismiss and the Kyser defendants have filed a partial motion to dismiss, limited to plaintiff's RCRA claims.[1]

---

[1]*In their briefs, defendants state that they are reasserting and adopting their prior motions. The court has not considered prior briefs, as that would impose an undue burden on the court and, as plaintiff points out, allow circumvention of the page limitations on briefs set by the local court rules. Unless expressly authorized to do otherwise, a party must include in or with a brief all the arguments and documents it wants the court to consider.*

When considering whether a plaintiff's claims should be dismissed under Fed.R.Civ.P. 12(b)(6), the court accepts all well-pleaded factual allegations as true and views them in the light most favorable to the plaintiff as the nonmoving party. Anderson v. Suiters, 499 F.3d 1228, 1232 (10th Cir. 2007). The question is whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The complaint must provide sufficient factual allegations to "raise a right to relief above the speculative level." *Id.* at 555. Considering plaintiff's claims against defendants under this standard, the court concludes defendants' motions should be granted as to plaintiff's RCRA claims and otherwise denied.

## Background

Stratford makes the following allegations in its second amended complaint. In 1977 63 Associates, Inc., Stratford's predecessor-in-interest, leased the Property to Kinney Shoe Corporation ("Kinney") for thirty years with three optional five year extensions. A series of assignments and subleases followed. In 1995 Kinney sublet the property to the Kyser defendants. "By its own terms, the Kyser Sub-Lease was executed for the specific and sole purpose of the Kyser Defendants using the Property as a 'full service dry cleaning plant and laundry.'" Second Amended Complaint, Doc. #71, ¶ 27 (quoting Kyser Sub-Lease at § 401).[2] The Kyser defendants installed dry cleaning equipment on the Property. Shortly thereafter, the Kyser defendants sublet the Property to Chunga and then Green to operate dry cleaning

---

[2]Page references for briefs and exhibits are to the CM/ECF document and page number.

businesses. Plaintiff alleges that the Kyser defendants participated with Chunga in the dry cleaning operations.

After Foot Locker became Kinney's corporate successor-in-interest, it assigned its interest in the lease in 2002 to Fog Cap. Fog Cutter managed the lease. The Kyser defendants continued to sublease the Property from Fog Cap for use as a dry cleaning business. The Kyser sub-lease terminated by its own terms in November 2006 and Green executed a new sublease with Fog Cap to use the Property "'for a Dry Cleaner, and for no other purpose.'" *Id.* at ¶ 43 (quoting Green Sub-Lease at § 401). The lease was signed by Fog Cutter on behalf of Fog Cap. In August 2008 Fog Cap evicted Green. His sub-lease terminated in November 2011. In February 2012, the lease held by Fog Cap terminated by its own terms and Stratford regained control of the Property.

At that time, Stratford alleges that it became aware that a "hazardous chlorinated solvent which is commonly used in the dry cleaning business and is known as tetrachloroethene a/k/a tetrachloroethylene or perchloroethylene ('PCE'), may have seeped into the building structure on the Property, as well as the soil and groundwater underlying the Property." *Id.* at ¶ 50. Plaintiff alleges that the Kyser defendants, Chunga and Green, while carrying out dry cleaning operations on the Property, caused or allowed hazardous materials that were generated by the dry cleaning equipment, including PCE to "migrate into the environment at and around the Property, including into soil and groundwater." Id. at ¶ 54.

Plaintiff alleges that, based on the discovery by Terracon Consultants, Inc., of PCE

in the soil and groundwater underlying the Property, the State of Oklahoma's Department of Environmental Quality ("ODEQ") filed an Administrative Compliance Order ("ACO") on November 12, 2012, which was issued to Stratford, the Kyser defendants, Chunga and Green, pursuant to the Oklahoma Environmental Quality Code.[3] In the ACO the ODEQ alleged that the ACO respondents had damaged the Property and caused substantial contamination of the Property's soil and groundwater and ordered them to abate the contamination in a manner consistent with the National Contingency Plan, 40 CFR parts 300-399. *Id.* at ¶ 60. In response to the allegations in the ACO, in March 2013 Stratford entered into a consent order with ODEQ. The state administrative proceeding commenced after this lawsuit was filed.

Stratford requests relief from Foot Locker, Fog Cap, the Kyser defendants, Green and Chunga (the "RCRA defendants") under RCRA's citizen suit provisions, 42 U.S.C. §§ 6972(a)(1)(A) (continuing violation) and (B) (endangerment). Specifically, it seeks a mandatory injunction compelling them to "cease their ongoing violations of RCRA regulations and to properly remediate the contamination site." Doc. #71, ¶ 71.[4] Stratford's states that its goal in filing this lawsuit is to use "the citizen suit provisions of RCRA to force

---

[3]*The Oklahoma Hazardous Waste Management Act, 27A Okla. Stat. §§ 2-7-101-134, establishes a hazardous waste management program that is administered by ODEQ. The Environmental Protection Agency granted Oklahoma authorization to implement and enforce RCRA requirements in the State.*

[4]*While plaintiff alleges a claim under RCRA's continuing violation provision, it focuses in its response briefs on its endangerment claims asserted under 42 U.S.C. § 6972(a)(1)(B). A question exists as to whether plaintiff has alleged a continuing violation claim, as some courts have held that continuing effects of past violations do not constitute ongoing or intermittent violations for purposes of § 6972(a)(1)(A). See* Bd. of County Comm'rs of Cnty. of La Plata v. Brown Group Retail, Inc., *598 F.Supp.2d 1185, 1198–1201 (D.Colo.2009).*

the RCRA Defendants to comply with RCRA requirements by cleaning up the hazardous waste they allowed to contaminate the adjacent and down-gradient properties." Doc. #102, p. 12.

Under CERCLA Stratford seeks declaratory relief and the recovery from all defendants except Green of their equitable shares of the response costs it has incurred and will incur in connection with the release of hazardous substances at the Property.[5] Stratford also seeks a declaration that Fog Cap and Foot Locker are obligated under the terms of the lease, among other things, to pay the costs of investigating the extent of the contamination and damage and restoring the property to its pre-lease condition and to indemnify it for all costs it incurs with respect to the Property. It asserts a breach of contract claim against Foot Locker and Fog Cap, trespass claim, public and private nuisance, negligence and negligent or willful injury to property claims against all defendants but Green.

RCRA

Defendants[6] claim Stratford cannot obtain relief under RCRA after it executed a Consent Order with ODEQ, in which it has agreed to clean up the contamination. They claim plaintiff's RCRA claims are moot, as the Consent Order has achieved RCRA's goal of remediation and eliminated the need for an injunction.[7] Alternatively, they argue that

---

[5] *Stratford asserts both cost recovery and contribution claims under CERCLA.*

[6] *When discussing plaintiff's RCRA claims, the court's reference to defendants is to the RCRA defendants.*

[7] *Foot Locker claims that, while plaintiff initially asserted that it intended to seek injunctive relief under RCRA to compel defendants to remedy off-site contamination while it addressed the on-*

the court should abstain under either the Burford or primary jurisdiction doctrines.

Stratford responds that the CO did not moot its claim for RCRA relief as some defendants are not parties to the settlement and there has been no remediation. Stratford contends that it seeks under RCRA "not merely to have property cleaned up, but to have the proper parties do it." Doc. #105, p. 10. It claims that, "[b]y issuing a RCRA injunction to address impacted off-site properties under ODEQ oversight, the Court could fulfill its essential role of determining the parties' liability and relative share thereof . . . ." *Id.* at p. 11. Stratford asserts that the ODEQ "has agreed to recognize any RCRA injunctive relief obtained by Stratford." *Id.* at p. 12.

"RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste." Meghrig v. KFC Western, Inc., 516 U.S. 479, 483 (1996). According to the Supreme Court, RCRA "is not principally designed to effectuate the cleanup of toxic waste sites or to compensate those who have attended the remediation of environmental hazards." *Id.* Rather, its primary purpose "is to reduce the generation of hazardous waste and to ensure the proper treatment, storage, and disposal of that waste which is nonetheless generated, 'so as to minimize the present and future threat to human health and the environment.'" *Id.* (quoting 42 U.S.C. § 6902(b)). To accomplish its goals, RCRA authorizes citizen suits. The Act allows a private party to sue any person, including the United States and governmental agencies, who is currently violating RCRA's

---

*site contamination, it has admitted that the Consent Order does not distinguish between on-site and off-site contamination. Plaintiff does not argue otherwise.*

regulations and standards, 42 U.S.C. § 6972(a)(1)(A), or "against certain responsible persons, including former owners, 'who ha[ve] contributed or who [are] contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which *may present* an *imminent* and substantial endangerment to health or the environment.'" Meghrig, 516 U.S. at 484 (quoting 42 U.S.C. §6972(a)(1)(B)).

Citizen suits under RCRA are precluded if the Administrator of the Environmental Protection Agency or a state is diligently prosecuting a compliance or remedial "action."[8] Baykeeper v. NL Indus., Inc., 660 F.3d 686, 691 (3rd Cir. 2011). Courts have uniformly interpreted "action" as referring "only to formal proceedings in federal or state court." PMC, Inc. v. Sherwin-Williams Co., 151 F.3d 610, 619 (7th Cir. 1998); *see* Chico Serv. Station, Inc. v. Sol Puerto Rico Ltd., 633 F.3d 20, 35 (1st Cir. 2011). Despite their recognition of "Congress's evident desire that citizens' suits supplement rather than displace state enforcement," PMC, 151 F.3d at 619, courts have been reluctant to read "action" broadly. *E.g., id.* The reluctance stems in part from "the interminable character of much administrative process and the difficulty of deciding on a threshold below which the process is too tentative to justify barring a citizen's suit." *Id.* As a result, citizens have been

---

[8]*Citizen suits are statutorily barred if (1) the EPA or State is actually engaged in a removal action under section 104 of CERCLA, (3) the EPA or State has incurred costs to initiate a Remedial Investigation and Feasibility Study under section 104 of CERCLA and is diligently proceeding with a remedial action, or (4) the EPA "has obtained a court order (including a consent decree) or issued an administrative order ...pursuant to which a responsible party is diligently conducting a removal action, Remedial Investigation and Feasability Study (RIFS) or proceeding with a remedial action." 42 U.S.C. §§ 6972(b)(2)(B); (b)(2)(C).*

routinely allowed to proceed with their RCRA suits despite parallel state proceedings. Requests for absention have generally been rejected, with the courts often reciting the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976). *E.g.*, Spillane v. Commonwealth Edison Co., 291 F. Supp. 2d 728, 731-35 (N.D. Ill. 2003)

While there is no statutory bar here to plaintiff's RCRA claims, as ODEQ "has [not] filed a formal action in state or federal court" and is not "pursuing one of a handful of remedial actions under CERCLA," Chico, 633 F.3d at 31 n.15, this case is in a different posture than the cases cited by the parties.[9]  An agreed plan for cleaning up all the

---

[9]*In those cases the relief being sought by the RCRA plaintiff differed from that sought by the state agency in its administrative or state court proceeding, Me. People's Alliance v. Holtrachem Mfg. Co., 2001 WL 1704911, at \*9 (D.Me. Jan. 8, 2001) ("[S]ince instituting a legal suit in 1991 all the EPA has done is write a letter to HoltraChem, on the eve of this suit, requesting that it commission a study to investigate the down-river impacts of mercury contamination. This letter has no binding force on HoltraChem because it exceeds the scope of the Consent Decree, which governs only the plant site and discharge points."); or the government had taken no action or was not diligently proceeding with a remedial action, e.g., Baykeeper, 660 F.3d at 692 ("In light of agency inaction with respect to the river sediments over the last several years, we see little danger of a court-ordered remediation conflicting with NJDEP directives."); Chico Serv. Station, 633 F.3d at 34 ("None of these steps requires that the court directly review actions taken by the Puerto Rico EQB, which, in any event, has issued no final order. Indeed, the fact that the EQB has taken so little action over the past seventeen years suggests that conflict with the EQB's proceedings is unlikely."); City of Waukegan v. Arshed, 2009 WL 458621, at \*3 (N.D. Ill. Feb. 23, 2009) (defendants' voluntary participation in state environmental protection agency's remediation program did not warrant application of primary jurisdiction doctrine); Stewart-Sterling One, LLC v. Tricon Global Restaurants, Inc., 2002 WL 1837844, at \*6 (E.D.La. 2002) (application of primary jurisdiction doctrine not warranted in absence of hearings before the state department of environmental quality or agency orders that might conflict with court's enforcement of RCRA); Prisco v. New York, 1992 WL 88165 at \*3 (S.D.N.Y. Apr. 22, 1992) ("While the regulation of the environment is certainly an important concern of the state, the state is not seeking to enforce its environmental laws in the pending state proceeding. Instead, the state itself is alleged to have violated those laws.") (internal citations omitted) or there was not an agreed consent order involving the plaintiff that resolved the entire hazardous waste issue. See generally Davies v. Nat'l Coop. Refinery Ass'n, 963 F.Supp. 990*

contamination is in place. A consent order has been entered, which plaintiff does not allege will fail to remedy the contamination.[10] *See* Spillane, 291 F. Supp.2d at 730-31 (Though defendants had "proceeded to effect remediation of that particular site under Illinois Environmental Protection Agency's ('IEPA') Site Remediation Program ('SRP')," the parties disputed whether the site represented the full extent of the contaminated land and "whether the current remediation efforts [had] been appropriate or adequate even within the limited site."); Me. People's Alliance v. Holtrachem Mfg. Co., 2001 WL 1704911, at *9 (D.Me. Jan. 8, 2001) ("In my view, this citizen suit is precisely the sort of citizen suit contemplated by Congress, one in which citizens are seeking to enforce environmental laws in circumstances that the relevant administrative agencies have overlooked or are otherwise failing to diligently prosecute.") (internal quotations omitted).

What plaintiff essentially wants is for the court, under the auspices of RCRA, to determine who is responsible for the off-site clean up and order it done under the plan put in place by Stratford and the ODEQ. That does not appear, though, to be the purpose of RCRA. The primary goal of the citizen suit provision is "'namely the prompt abatement of imminent and substantial endangerments.'" Adkins v. VIM Recycling, Inc., 644 F.3d 483, 498 (7th Cir. 2011) (quoting H.R.Rep. No. 98–198, 1, 98th Cong., 2nd Sess., pt. 1, at 53 (1984), reprinted in 1984 U.S.Code Cong. & Admin. News 5576, 5612.). As the Seventh

---

*(D.Kan.1997) (relying on primary jurisdiction doctrine, court abstained from exercising jurisdiction and dismissed RCRA citizen suit ).*

[10]*Plaintiff does not assert that the Consent Order distinguishes between on-site and off-site contamination.*

Circuit stated in <u>Adkins</u>, when discussing why parallel citizen suits and government suits are permitted by RCRA,

> Our dissenting colleague points out correctly that RCRA gives states a vital role in managing environmental problems to protect the health and safety of their residents. But when we look at RCRA as a whole, we see that Congress also chose not to place absolute faith in state and federal agencies. It provided for citizen suits to enable affected citizens to push for vigorous law enforcement even when government agencies are more inclined to compromise or go slowly. The plaintiffs in this case are doing nothing more than exercising the rights that Congress gave them to protect their own health and safety.

*Id.* at 501 (internal citation omitted). The problem is that Stratford's specific concerns here, while valid, are not of health and safety, but monetary. Plaintiff's asserts that it is not asking the court to meddle with "the extent or type of remediation blessed by ODEQ," but instead determine "**which parties must** undertake the work required by ODEQ." Doc. #102, p. 23. However, those do not appear to be concerns that RCRA was primarily designed to address. Moreover, while plaintiff asserts the relief it requests is simple, it is, in effect, asking the court to rewrite the consent order it executed with ODEQ. Stratford acknowledges that the agency "elected not to pursue the principal responsible parties," Doc. #102, p 23, yet its stated goal is to force the agency to accept remediation of the off-site contamination by the very parties it chose not to go after.[11] Plaintiff cites <u>Coll. Park Holdings, LLC. v. Racetrac Petroleum, Inc.</u>, 239 F. Supp. 2d 1334 (N.D. Ga. 2002) as "[a]n example of the type of

---

[11]*Fog Cap characterizes this as an election of remedies. It asserts that Stratford, by "agreeing to the CO ... made a clear, unequivocal, unconditional, and deliberate choice, by a decisive act, to remediate the Property and seek contribution from the Defendants under CERCLA." Doc. #93, p. 21. However, the remedies sought in this suit are not inconsistent.*

10

RCRA injunctive order satisfying Fed.R.Civ.Proc. 65 sought by Stratford and providing a state agency with oversight." Doc. #102, p. 23, n.15.  However, College Park is clearly distinguishable. The case was brought under RCRA's continuing violation provision, 42 U.S.C. § 6972(a)(1)(A), the plaintiff was not alleged to be liable and the defendant not only had been in violation of state rules for several years and been subject to state agency oversight, but it had repeatedly failed to comply with agency directives.

While the court is not unsympathetic with Stratford's position and its effort to force other defendants to share in the remediation costs as soon as possible, it concludes that plaintiff's RCRA claims should be dismissed. *See* Trinity Indus., Inc. v. Chicago Bridge & Iron Co., ___ F.3d ___, 2013 WL 4418534, (3d Cir. Aug. 20, 2013); McCormick v. Halliburton Co., 2012 WL 1119493, at *1-3 (W.D.Okla. April 3, 2012) (dismissing RCRA claims on basis of ODEQ's primary jurisdiction over issues). Assuming plaintiff's RCRA claims were properly alleged when this action was filed, intervening events have rendered the need for injunctive relief of the type envisioned by the Act, moot.[12] *See generally* Chico, 633 F.3d at 36 ("It is undisputed that some—or all—of the relief requested by Chico remains outstanding and could be granted by a federal court. Most significantly, no order requiring remediation of the filling station site has been issued by any commonwealth or federal tribunal.").

---

[12]*The court is not persuaded by defendant Foot Locker's additional argument that plaintiff's RCRA claims should be dismissed because it has an adequate remedy at law under CERCLA and finds it unnecessary to determine here whether it could be considered an owner, operator or contributor to the contamination for purposes of RCRA. Those arguments are addressed, however, in conjunction with plaintiff's CERCLA claims.*

The Third Circuit was confronted with a similar issue in Trinity. The Commonwealth of Pennsylvania had initiated enforcement proceedings against the plaintiff (Trinity), following an investigation regarding the alleged release of hazardous substances at an industrial facility it owned, which was called the South Plant. Trinity had pleaded nolo contendere to misdemeanor counts of unlawful conduct and entered into a Consent Order with the Pennsylvania Department of Environmental Protection ("DEP"). Pursuant to the terms of the Consent Order, Trinity "agreed to fund and conduct 'Response Actions' according to a scheduled approved by DEP." Trinity, 2013 WL 4418534, at *1. After it signed the Consent Order, which required it to undertake remediation of the South Plant, Trinity sued a prior owner of the plant, Chicago Bridge & Iron Company ("CB & I"), under CERCLA, RCRA, and state law. Trinity claimed CB & I was responsible for some of the environmental contamination at the plant and sought contribution from CB & I for its share of remediation costs. It also sought a mandatory injunction requiring CB & I's participation in the cleanup. It claimed that while it had undertaken "preliminary investigative work in anticipation of cleanup'" it had "yet to perform shovel-in-the ground remediation." *Id.* (internal quotations omitted). One of the issues of first impression addressed by the Third Circuit was "whether injunctive relief pursuant to RCRA § 7002(a)(1)(B) is available where a remediation plan has already been instituted and begun." *Id.* at *3. The district court had denied Trinity relief under RCRA, holding that that "the Consent Order rendered any injunctive relief futile." *Id.* at *6.

Noting that a mandatory injunction "is an extraordinary remedy that is only granted

sparingly by the courts," *id.*, the Third Circuit affirmed the denial of injunctive relief. The court relied on the distinction the Supreme Court made in Meghrig between the remedial schemes created by RCRA and CERCLA, RCRA being primarily designed to "'minimize the present and future threat to human health and the environment.'" *Id.* at *8 (quoting Meghrig, 516 U.S. at 483). Because the "conditions of the Consent Order [were] in place and appear[ed] to be effective," the court concluded that Trinity had failed to show that "future participation by CB & I in the remediation effort [would] aid in the minimization of such threats." *Id.* In other words, Trinity had not demonstrated that "CB & I's participation [was] 'necessary,'" as required by RCRA § 7002(a)(1)(B) and, thus, it was not entitled to injunctive relief under RCRA. *Id.*

Although Trinity was decided on summary judgment, plaintiff has not alleged in the amended complaint that the Consent Order it executed with ODEQ is lacking in any respect. In fact, Stratford asserts just the opposite, that defendants should undertake and complete remediation in accordance with the Consent Order, subject to ODEQ's oversight. *See* Doc. #102, p. 25. Following Trinity, the court concludes plaintiff's RCRA claims should be dismissed.

Even if plaintiff's claims were not dismissed on the indicated grounds, the court would nonetheless dismiss them under the doctrine of primary jurisdiction, *see* Davies v. Nat'l Coop. Refinery Ass'n, 963 F.Supp. 990, 997-98 (D.Kan.1997), or abstain under

Burford.[13]  *See generally* Baykeeper, 660 F.3d at 691-94 (discussing doctrine of primary jurisdiction and Burford abstention).  Providing plaintiff with the relief it seeks under RCRA could result in conflicting orders regarding the remediation and disrupt the plan the State has in place to remedy the contamination.[14]  The court acknowledges that this not the typical case warranting either deference to an administrative agency or Burford abstention,[15] but nonetheless concludes plaintiff is not entitled to proceed with its RCRA claims.[16]

---

[13]*The court recognizes that "when Congress has set forth the conditions under which state or administrative action will preclude a federal claim, as it did in § 6972(a)(1)(B), a federal district court must be cautious about refusing to exercise jurisdiction when those conditions are not present lest it frustrate Congress' scheme for vindicating important federal interests." Davies, 963 F.Supp at 997.*

[14]*Plaintiff claims the Consent Order was expressly drafted to accommodate any court ruling requiring defendants to address off-site contamination. While the Consent Order states that ODEQ does not intend to affect plaintiff's right to pursue any actions or remedies under the common law or statutory law and that it could be amended by mutual consent, it does not indicate ODEQ would agree to the court's substitution of defendants for plaintiff as the parties responsible for remediating the off-site contamination.*

[15]*The parties do not argue that Colorado River doctrine applies. See generally Chico, 633 F.3d at 27 nn. 9 & 10. (1st Cir. 2011) (The Colorado River Doctrine "addresses situations in which there are parallel state and federal proceedings and considerations of wise judicial administration ... counsel against duplicative lawsuits." (internal quotations omitted)).*

[16]*Plaintiff argues that ODEQ was not diligent in addressing the contamination, citing its discovery of the abandoned dry cleaner in 2008. Doc. #102, p. 25. However, the Consent Order includes in its Findings of Fact that a DEQ inspector arrived at the property in 2008 to conduct a routine inspection, found the doors locked and no one there. He "determined that all dry cleaning operations had ceased . . . [and saw] that some of the dry cleaning machines and equipment remained at the Facility. . . .However, at no point was the DEQ contacted regarding any spill or incident causing the release of hazardous waste from the dry cleaning operations that occurred at the Facility." Doc. #93-2, p. 3. (The court recognizes that the findings of fact are not admissions "[a]s to others who are not parties to [the] Consent Order"). Plaintiff did file its lawsuit before ODEQ initiated its formal enforcement proceeding, but it was only a matter of four months.*

Defendants' motions to dismiss will be granted with respect to plaintiff's RCRA claims.[17]

CERCLA

The court will first address Foot Locker and Fog Cap's challenges to plaintiff's CERCLA claims and then address Fog Cutter's motion to dismiss.

Foot Locker and Fog Cap assert various reasons why plaintiff's CERCLA claims should be dismissed. None of them are persuasive at this stage of the litigation.

Defendants initially contend that that plaintiff cannot assert both a cost recovery claim under CERCLA § 107(a) and a contribution claim under CERCLA § 113(f). Although it is doubtful that plaintiff will be entitled to proceed under CERCA § 107(a), the court concludes it is premature to make that determination now. Plaintiff's allegations are sufficient to permit it to seek both remedies.

Defendants next argue that plaintiff's contribution claim fails because, as mere lessees, they cannot be held liable under CERCLA. The court disagrees. Plaintiff has alleged sufficient facts to state plausible claims for relief against Foot Locker and Fog Cap as owners, if not operators, under CERCLA. *See* 42 U.S.C. § 9607(a)(2).[18] *See* Commander Oil Corp. v. Barlo Equip. Corp., 215 F.3d 321 (2d Cir. 2000) (discussing owner/operator

---

[17]*Because of the court's conclusion that plaintiff cannot proceed under RCRA, it is unnecessary to consider defendants' other bases for challenging plaintiff's RCRA claims.*

[18]*CERCLA imposes liability on current owners and operators of a facility, past owners or operators, who owned or operated when hazardous substances were disposed of there, persons who arrange for the disposal or treatment of hazardous substances or their transport for disposal or treatment and persons who transport hazardous substances for disposal or treatment. 42 U.S.C. § 9607(a)(1)-(4).*

liability under CERCLA).[19].

Finally, the determination that plaintiff can pursue its cost recovery claims resolves Foot Locker's challenge to plaintiff's CERCLA claim for declaratory relief and the continued existence of plaintiff's CERCLA claims preclude Foot Locker and Fog Cap's requested dismissal of Stratford's pendent state law claims.

Fog Cutter

Fog Cutter asserts that plaintiff's allegations of its liability under CERCLA are deficient because they fall short of establishing that it was an "operator" or "arranger" under the statute.[20] Stratford premises Fog Cutter's CERCLA liability on its alleged management of the Property under a management agreement with Fog Cap. It asserts that Fog Cutter was an "operator" under CERCLA because it managed the Property and was contractually obligated to control and supervise the handling of hazardous waste and address any contamination that occurred. Stratford also alleges that, by abandoning the site after it

---

[19]*The Second Circuit listed several factors that "might transform a lessee into an owner:" "1) whether the lease is for an extensive term and admits of no rights in the owner/lessor to determine how the property is used; (2) whether the lease cannot be terminated by the owner before it expires by its terms; (3) whether the lessee has the right to sublet all or some of the property without notifying the owner; (4) whether the lessee is responsible for payment of all taxes, assessments, insurance, and operation and maintenance costs; and (5) whether the lessee is responsible for making all structural and other repairs. This non-exclusive list is meant to reinforce the point that the critical question is whether the lessee's status is that of a de facto owner and not whether it exercises control over the facility."* Commander Oil, 215 F.3d at 330-31.

[20]*It is far from clear that plaintiff will ultimately prevail on its CERCLA claims against Fog Cutter. However, for purposes of resolving Fog Cutter's motion to dismiss, the court must accept the material allegations of the complaint as true and construe the amended complaint in favor of Stratford.*

evicted Green, Fog Cutter "arranged" for the disposal of the hazardous substances. The court concludes these allegations suffice to allow plaintiff to pursue its CERCLA claims against Fog Cutter. That determination precludes the requested dismissal of Stratford's pendent state law claims.

Accordingly, the motions to dismiss filed by Foot Locker [Doc. #96] and Fog Cap [Doc. #93] are granted in part and denied in part. The partial motion to dismiss filed by the Kyser defendants [Doc. #94] is granted and the motion to dismiss filed by defendant Fog Cutter [Doc. #95] is denied. Stratford's claims asserted under the Resource Conservation and Recovery Act against Foot Locker, Fog Cap, the Kyser defendants, Green and Chunga are dismissed with prejudice.[21]  Plaintiff's CERCLA and pendent state law claims remain for resolution.

**IT IS SO ORDERED**.

Dated this 8th day of October, 2013.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[21]The court sua sponte dismisses plaintiff's RCRA claims against defendants Green and *Chunga.*